UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

KENNETH BERNARD BURNEY,

    Plaintiff,

    v.                                                                Case No. 25-cv-1704-bbc

NURSE WITT,
JOHN AND JANE DOES,
LT. POLLACK,
CO BUSNELLI,
Z. PAUL,
C. STEVENS, and
J. PERTU,

    Defendants.

---

## SCREENING ORDER

---

Plaintiff Kenneth Bernard Burney, who is currently serving a state prison sentence at Green Bay Correctional Institution and representing himself, filed a complaint under 42 U.S.C. §1983, alleging that his civil rights were violated. This matter comes before the Court on Burney's motion for leave to proceed without prepaying the full filing fee and to screen the complaint.

### MOTION TO PROCEED WITHOUT PREPAYING THE FILING FEE

Burney has requested leave to proceed without prepaying the full filing fee (*in forma pauperis*). A prisoner plaintiff proceeding *in forma pauperis* is required to pay the full amount of the $350.00 filing fee over time. *See* 28 U.S.C. §1915(b)(1). Burney has filed a certified copy of his prison trust account statement for the six-month period immediately preceding the filing of his complaint, as required under 28 U.S.C. §1915(a)(2), and has been assessed and paid an initial

partial filing fee of $3.38. Burney's motion for leave to proceed without prepaying the filing fee will be granted.

## SCREENING OF THE COMPLAINT

The Court has a duty to review any complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity and must dismiss any complaint or portion thereof if the prisoner has raised any claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b). In screening a complaint, the Court must determine whether the complaint complies with the Federal Rules of Civil Procedure and states at least plausible claims for which relief may be granted. To state a cognizable claim under the federal notice pleading system, a plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2). It must be at least sufficient to provide notice to each defendant of what he or she is accused of doing, as well as when and where the alleged actions or inactions occurred, and the nature and extent of any damage or injury the actions or inactions caused.

"The pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Id.* at 556. "[T]he complaint's allegations must be enough to raise a right to relief above the speculative level." *Id*. at 555 (internal quotations omitted).

ALLEGATIONS OF THE COMPLAINT

According to Burney, on June 21, 2025, he fell while playing basketball and broke his wrist. Burney explains that he was in a lot of pain, and his wrist was hanging at an odd angle. Burney was taken to the health services unit, where a Jane Doe nurse stated that he would need to be taken to the hospital. The nurse provided Burney with ice, but no pain medication. Burney was then directed to a strip cage, where security staff directed him to take his clothes off so he could be searched before he was taken to the hospital. Burney acknowledges that this is standard procedure, but his wrist made it extremely painful for him to comply with orders. Burney asserts that the John Doe corrections officer acknowledged his pain but explained that the search had to be completed before he could be taken to the hospital.

After Burney put his clothes back on, Lt. Pollack asked a nurse if anything needed to be done to accommodate Burney's injury before he was handcuffed and transported. An unidentified nurse said no accommodation was necessary. Lt. Pollack put a chain around Burney's waist and attached it to the handcuffs but before placing the handcuff on Burney's broken wrist, he again asked the nurse if a brace or some other type of accommodation was required. Again, the nurse said no. Burney asserts that Lt. Pollack said to him, "Whatever you decide to do regarding this incident remember I asked several times if a brace or something was needed." Burney asserts that the handcuff was tightened on his broken wrist, which caused an immediate jolt of pain through Burney's body and made him nauseous. Burney explains that as he was escorted from the building, security staff tried to hold his wrist at a natural angle, but once he was placed in the van, his wrist was again left to hang at an unnatural angle. After about an hour, a John Doe nurse came to the

3

van and tried to apply an ace bandage to Burney's wrist, but he was unable to do so around the handcuff and security staff asserted that, for security reasons, the handcuff could not be removed in the van. Burney asserts that once he arrived at the hospital, the intake nurse immediately instructed them to remove the handcuff.

Burney explains that he submitted an inmate complaint about how the nurses handled the situation. Initially, institution complaint examiner Paul Z recommended dismissal because Assistant Health Services Manager Witt informed him that Burney had refused to have his arm wrapped and placed in a sling, which was untrue. Julie Ludwig, who was the reviewing authority, accepted the recommendation and dismissed the inmate complaint. This decision was ultimately overruled by the Office of the Secretary. There were additional issues with a second inmate complaint about how security staff handled the issue. That inmate complaint was eventually dismissed.

On June 30, 2025, Burney had surgery on his wrist. Near the end of July 2025, Burney asserts that he started asking when he would begin physical therapy. He was consistently informed that no order for physical therapy had been placed. In mid-September 2025, Burney asserts that his wrist started to hurt more than normal. He states that it was swollen, and his range of motion was limited. Burney asserts that on September 24, 2025, he was forced to work. He was told that he would receive a conduct report if he did not work. Burney states that he contacted the health services unit and asked for a work restriction and to be seen by medical staff. A few days later, Burney was informed that he had an appointment scheduled with a provider on October 7, 2025.

On September 26, 2025, Burney was seen by Witt about receiving a new brace. Witt declined to give Burney a new brace or enter a work restriction, commenting that his wrist looked fine. When Burney explained that he was in pain and why he needed a work restriction, she

4

Case 1:25-cv-01704-BBC    Filed 02/04/26    Page 4 of 10    Document 11

dismissed his concerns. After Burney asked what her name was, he realized that she was the person who had told the institution complaint examiner that he had refused a wrap and sling, which was not accurate. Burney told her that he had started a lawsuit against her, believing that "informing her was the correct thing to do." Burney later learned that Witt had written him a conduct report after their interaction. Burney was found guilty of the charges and was given seven days of room confinement.

On October 7, 2025, Burney had an appointment with his provider. The provider entered a limited work restriction, limiting the weight Burney could lift to one pound. She also informed him that an order for a new brace had been placed.

## ANALYSIS

"[T]he Eighth Amendment, as the Supreme Court has interpreted it, protects prisoners from prison conditions that cause the wanton and unnecessary infliction of pain, including . . . grossly inadequate medical care." *Gabb v. Wexford Health Sources, Inc*., 945 F.3d 1027, 1033 (7th Cir. 2019) (quoting *Pyles v. Fahim*, 771 F.3d 403, 408 (7th Cir. 2014)) (internal quotations omitted). The Court uses a two-part test to evaluate whether medical care amounts to cruel and unusual punishment; it asks: 1) "whether a plaintiff suffered from an objectively serious medical condition" and 2) "whether the individual defendant was deliberately indifferent to that condition." *Id*. (quoting *Petties v. Carter*, 836 F.3d 722, 727-28 (7th Cir. 2016)). Non-medical officials are entitled to "rely on the expertise of medical personnel" and "will generally be justified in believing that the prisoner is in capable hands." *Arnett v. Webster*, 658 F.3d 742, 755 (7th Cir. 2011) (citing *Greeno v. Daley*, 414 F.3d 645, 656 (7th Cir. 2005)). It is only when a nonmedical official entirely ignores an inmate's complaints or has sufficient notice of "an excessive risk to inmate health or

safety" that he may be found deliberately indifferent for not taking action. *Id*. (quoting *Vance v. Peters*, 97 F.3d 987, 993 (7th Cir. 1996)).

With the foregoing legal principles in mind, the Court will allow Burney to proceed on a deliberate indifference claim against the unidentified nurse(s) who allegedly failed and/or refused to stabilize Burney's wrist and/or provide him with adequate pain relief prior to him being transported to the hospital. Burney also states a deliberate indifference claim against Lt. Pollack whose actions imply that he knew handcuffing Burney's broken wrist would pose a substantial risk of harm to Burney. Despite his apparent concern, he allegedly deferred to a nurse's decision that he knew posed an excessive risk to Burney's health. Burney may not, however, proceed against the other security officers who were present. Burney's allegations regarding these officers' involvement in the discussion between Lt. Pollack and the unidentified nurse(s) are too vague for the Court to reasonably infer that they were personally involved in the decision to proceed with handcuffing Burney. Moreover, it appears that Lt. Pollack was the supervising officer, and nothing suggests that the other officers had the authority to override his decision to defer to the nurse's treatment decisions.

The Court will also allow Burney to proceed on a First Amendment retaliation claim against Witt. To plead a retaliation claim, a plaintiff must allege that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the defendants' decision to take the retaliatory action." *Perez v. Fenoglio*, 792 F.3d 768, 783 (7th Cir. 2015) (quoting *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009)). According to Burney, after he informed Witt that he was going to pursue a lawsuit against her because of her involvement in the investigation of his inmate complaints, she wrote him a conduct report based

6

on misrepresentations of their interactions. These allegations are sufficient to state a retaliation claim.

Burney does not, however, state a claim against the unidentified security staff who strip-searched him. Burney acknowledges that, prior to being transported offsite, he had to be strip-searched for security purposes. He does not allege that staff rushed him through the process or that they harassed him while he slowly complied with orders. Nor does Burney allege that he requested a staff-assisted strip-search. The Court understands Burney was in a difficult position—complying with orders himself was painful, but asking staff to conduct the search by cutting off his clothes and touching his private areas would have been uncomfortable. The only reasonable inference is that both Burney and the officers navigated a very difficult situation the best they could.

Burney also does not state a claim against the individuals involved in investigating and ruling on his inmate complaints. "Prison grievance procedures are not mandated by the First Amendment and do not by their very existence create interests protected by the Due Process Clause, and so the alleged mishandling of [a prisoner's] grievance by persons who otherwise did not cause or participate in the underlying conduct states no claim." *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011) (citing *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007)). Burney's inmate complaints concerned completed acts of harm, so any missteps in the investigation and/or in ruling on the inmate complaints did not cause or contribute to the violation. *George*, 507 F.3d at 609-10.

Finally, Burney does not state a claim in connection with the circumstances surrounding the entry of a work restriction. It is not entirely clear on what basis Burney seeks to state a claim. He appears to suggest that staff should have more thoroughly searched the electronic records when

7

determining whether a work restriction was in place. But an alleged failure to properly identify the work restriction is a matter of negligence, which is not actionable under the Constitution. Moreover, this claim, which shares no common issues of law or fact with the claims on which Burney has been allowed to proceed is not properly joined in this action. *See* Fed. R. Civ. P. 18, 20; *see George*, 507 F.3d at 607 (holding that a plaintiff may join multiple defendants in a single case only if the plaintiff asserts at least one claim against each defendant that arises out of the same events or incidents and involves questions of law or fact that are common to all the defendants). Finally, it appears that Burney did not complete the exhaustion process with regard to these claims before he filed his complaint. *See* Dkt. No. 1 at 15 ("Plaintiff had filed grievances concerning these matters and is currently awaiting final decisions . . . ."); 42 U.S.C. §1997e(a) ("No action shall be brought . . . until such administrative remedies as are available are exhausted."). If Burney wants to proceed on claims in connection with his work restriction, he may do so in a separate case after the available administrative remedies are exhausted.

**IT IS THEREFORE ORDERED** that Burney's motion for leave to proceed *in forma pauperis* (Dkt. No. 3) is **GRANTED.**

**IT IS FURTHER ORDERED** that Burney fails to state a claim against all John/Jane Doe Defendants *except for the Jane Doe Nurses*; he also fails to state a claim against CO Busnelli, Z Paul, C. Stevens, and J. Pertu, so the clerk's office is directed to terminate them from this action.

After Lt. Pollack and Nurse Witt have an opportunity to respond to the complaint, Burney will have to use discovery to learn the name(s) of the Jane Doe Nurse(s).

**IT IS FURTHER ORDERED** that pursuant to an informal service agreement between the Wisconsin Department of Justice and this Court, copies of Burney's complaint and this order

are being electronically sent today to the Wisconsin Department of Justice for service on Lt. Pollack and Nurse Witt.

**IT IS FURTHER ORDERED** that, pursuant to the informal service agreement between the Wisconsin Department of Justice and this Court, Lt. Pollack and Nurse Witt shall file a responsive pleading to the complaint within **sixty days** of receiving electronic notice of this order.

**IT IS FURTHER ORDERED** that the agency having custody of Burney shall collect from his institution trust account the $346.62 balance of the filing fee by collecting monthly payments from Burney's prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this action. If Burney is transferred to another institution, the transferring institution shall forward a copy of this Order along with Burney's remaining balance to the receiving institution.

**IT IS FURTHER ORDERED** that a copy of this order be sent to the officer in charge of the agency where Burney is confined.

**IT IS FURTHER ORDERED** that the parties may not begin discovery until after the Court enters a scheduling order setting deadlines for discovery and dispositive motions.

**IT IS FURTHER ORDERED** that plaintiffs who are inmates at Prisoner E-Filing Program institutions must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court. The Prisoner E-Filing Program is mandatory for all inmates of Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution,

and Oshkosh Correctional Institution.  Plaintiffs who are inmates at all other prison facilities must submit the original document for each filing to the Court to the following address:

>  Honorable Byron B. Conway
>  c/o Office of the Clerk
>  United States District Court
>  Eastern District of Wisconsin
>  125 S. Jefferson Street, Suite 102
>  Green Bay, WI 54301

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS.  It will only delay the processing of the matter.

Burney is further advised that failure to make a timely submission may result in the dismissal of this action for failure to prosecute.  In addition, the parties must notify the Clerk of Court of any change of address.  Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated at Green Bay, Wisconsin this 4th day of February, 2026.

>  *s/ Byron B. Conway*
>  BYRON B. CONWAY
>  United States District Judge